UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INFORMATION** CR 26.97 JWB |
| Plaintiff, | 18 U.S.C. § 371 |
| | 18 U.S.C. § 1343 |
| v. | 18 U.S.C. § 2 |
| FAHIMA EGEH MAHAMUD, | |
| Defendant. | |

THE UNITED STATES ATTORNEY CHARGES THAT:

At times relevant to the Information:

## INTRODUCTION

1. Defendant FAHIMA EGEH MAHAMUD devised and carried out a scheme to defraud the Federal Child Nutrition Program, a program designed to provide free meals to children. FAHIMA EGEH MAHAMUD exploited changes in the program intended to ensure that underserved children received adequate nutrition during the COVID-19 pandemic to enrich herself by fraudulently misappropriating hundreds of thousands of dollars in federal child nutrition program funds. FAHIMA EGEH MAHAMUD also devised and caried out a scheme to defraud the United States by seeking reimbursement from the Child Care Assistance Program, a program designed to provide child daycare assistance to low-income families.

### A.    Background on the Federal Child Nutrition Program

2. The Food and Nutrition Service was an agency of the United States Department of Agriculture ("USDA") that administered various federal child



SCANNED
MAY 2 0 2026
U.S. DISTRICT COURT MPLS

*United States v. Fahima Egeh Mahamud*

nutrition programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3.      The Summer Food Service Program was a federal program established to ensure that children continued to receive nutritious meals when school was not in session. The Summer Food Service Program reimbursed non-profit organizations and other participating entities that served free healthy meals and snacks to children and teens in low-income areas.

4.      The Child and Adult Care Food Program was a federal program that reimbursed non-profit organizations and other participating entities that served healthy meals and snacks to children and adults at participating child care centers, daycare homes, and after-school programs.

5.      The Federal Child Nutrition Program operated throughout the United States. The USDA's Food and Nutrition Service administered the program at the national and regional levels by distributing federal funds to state governments, which provided oversight of the Federal Child Nutrition Program.

6.      The Minnesota Department of Education ("MDE") administered the Federal Child Nutrition Program in Minnesota.

7.      Meals funded by the Federal Child Nutrition Program in Minnesota were served at "sites." Each site participating in the Federal Child Nutrition Program was required to be sponsored by an organization authorized to participate in the Federal Child Nutrition Program. Sponsors were required to submit an application

2

*United States v. Fahima Egeh Mahamud*

to MDE for each site. Sponsors were responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8. Sponsors submitted reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provided federal reimbursement funds to MDE on a per-meal basis. MDE provided the federal funds to the sponsoring agency, which in turn paid the reimbursement funds to the sites under its sponsorship. The sponsoring agency retained ten to fifteen percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

9. Historically, the Federal Child Nutrition Program provided meals to children involved in education-based programs or activities. During the COVID-19 pandemic, the USDA waived several of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. It also allowed food distribution to children outside of educational programs.

**B.       Background on the Child Care Assistance Program**

10. The United States Department of Health and Human Services ("HHS") was a federal agency. The Administration for Children and Families ("ACF") was an agency within HHS.

11. ACF administered the Child Care and Development Fund ("CCDF") through which ACF provided block grants to states for the purpose of reimbursing child care providers for providing services to qualified recipients.

*United States v. Fahima Egeh Mahamud*

12.    The State of Minnesota received CCDF block grants through the Child Care Assistance Program ("CCAP"), which was administered by the Minnesota Department of Human Services ("DHS") and Department of Children, Youth and Families ("DCYF").

13.    To be eligible for reimbursement from CCAP, child care providers were required to be licensed in the State of Minnesota and enrolled in CCAP. The child care provider was also required to be registered in each county in which the attending children resided.

14.    Child care providers were informed of the requirements governing their participation in the Minnesota child care program, including billing procedures, through the Minnesota CCAP Child Care Manual.

15.    One of the requirements of participation, by both child care providers and recipients, was the collection and payment of co-payments. The co-payment was paid to the family's child care provider biweekly. The co-payment amount was based on family size and annual income after allowable deductions. Co-payments were graduated to move families towards full payment of their child care costs as their income increased.

16.    Child care providers submitted claims through the Provider Hub, administered by the DHS and DCYF. In submitting claims for reimbursement from CCAP, child care providers were required to certify that they had collected co-payments consistent with program requirements, had waived co-payment collection, or were owed a co-payment debt.

*United States v. Fahima Egeh Mahamud*

### C.     Feeding Our Future

17.     Feeding Our Future was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Feeding Our Future was an approved sponsor of the Federal Child Nutrition Program.

18.     Prior to the onset of the COVID-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of Minnesota daycares and after-school programs in the Federal Child Nutrition Program.

19.     Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

### D.     The Defendant and Her Role

20.     The defendant, FAHIMA EGEH MAHAMUD, was the Chief Executive Officer of Future Leaders Early Learning Center ("Future Leaders"), a child care center located in Minneapolis, Minnesota. FAHIMA EGEH MAHAMUD registered Future Leaders with the State of Minnesota in or around March 2015.

21.     Through Future Leaders, FAHIMA EGEH MAHAMUD participated in the Federal Child Nutrition Program as a distribution site under the sponsorship of Feeding Our Future. As a distribution site, Future Leaders was supposed to provide food and meals to children participating in the Federal Child Nutrition Program; Future Leaders would be reimbursed for the cost of the food and meals it provided.

5

*United States v. Fahima Egeh Mahamud*

22.     Between approximately January 2021 and July 2021, FAHIMA EGEH MAHAMUD submitted over $826,000 in reimbursement claims to Feeding Our Future for meals purportedly served to children at Future Leaders. During the same time period, Future Leaders received more than $854,000 in Federal Child Nutrition Program funds.

23.     Through Future Leaders, FAHIMA EGEH MAHAMUD also submitted claims to CCAP for the reimbursement of child care services purportedly provided in accordance with Federal, State, and local statutes and regulations. As a child care provider enrolled in CCAP, Future Leaders was required to collect co-payments from recipients and certify that such co-payments had been collected as a material condition of reimbursement.

24.     Between approximately October 2022 and December 2025, FAHIMA EGEH MAHAMUD submitted over 13,000 claims to the CCAP program. Approximately 6,144 of these claims were for services provided to recipients for whom a co-payment was required to be collected, and for which Future Leaders was reimbursed approximately $4,629,929.

**THE SCHEME TO DEFRAUD THE**
**FEDERAL CHILD NUTRITION PROGRAM**

25.     From in or around December 2020 through in or around March 2023, in the State and District of Minnesota and elsewhere, the defendant,

**FAHIMA EGEH MAHAMUD,**

and others known and unknown to the United States Attorney, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of

6

*United States v. Fahima Egeh Mahamud*

materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing this scheme caused wire transmissions to be sent in interstate commerce.

26.    A main purpose of the scheme and artifice to defraud was to fraudulently obtain hundreds of thousands of dollars in Federal Child Nutrition Program funds. As a food site operator in the Federal Child Nutrition Program, MAHAMUD was responsible for serving food to children. However, in furtherance of the scheme, MAHAMUD caused the submission to Feeding Our Future and MDE false information, including fake meal counts, rosters, and invoices with substantially inflated figures. MAHAMUD consequently received Federal Child Nutrition Program funds that substantially exceeded the amount of food that MAHAMUD served to children.

27.    In or around October 2018, Feeding Our Future began sponsoring Future Leaders as a food site in the Federal Child Nutrition Program. MAHAMUD purported to operate the Future Leaders food distribution site at 3641 Chicago Avenue S., in Minneapolis, Minnesota.

28.    From December 2020 to July 2021, MAHAMUD claimed to serve tens of thousands of meals to children at the Future Leaders site each month. In reality, MAHAMUD's operations served only a fraction of those claimed meals.

29.    In furtherance of the scheme, MAHAMUD completed meal count sheets falsely representing the number of meals served at the Future Leaders site each day. At times, MAHAMUD represented in those meal counts to be serving two meals a

day to about 1,000 different children, seven days a week. MAHAMUD signed those meal counts, representing them to be accurate. However, as MAHAMUD knew, those meal counts were false and inflated. MAHAMUD then caused those counts to be submitted to Feeding Our Future in support of Future Leaders' fraudulent claims for reimbursement.

30.     MAHAMUD also submitted to Feeding Our Future fraudulent invoices purporting to substantiate food purchased by Future Leaders to feed children within the food program. Among Future Leaders' purported food vendors was a company called Alif Halal. Alif Halal was located in Burnsville, Minnesota, and was owned and operated by Hoda Abdi. Hoda Abdi provided MAHAMUD with false receipts from Alif Halal purporting to document food purchased by Future Leaders. MAHAMUD knew the Alif Halal receipts were false and inflated. Even so, MAHAMUD provided those receipts to Feeding Our Future in support of MAHAMUD's claims for reimbursement. In exchange for those false invoices, MAHAMUD paid Alif Halal approximately $31,000 and Hoda Abdi approximately $6,400 from the Future Leaders bank accounts.

31.     MAHAMUD also submitted to Feeding Our Future rosters purporting to list the names of children who were served meals at the Future Leaders food distribution site. As MAHAMUD knew, those rosters did not accurately reflect the identities and numbers of children actually fed at Future Leaders.

32.     Between approximately January 2021 and July 2021, Future Leaders received more than $850,000 in Federal Child Nutrition Program funds directly from

*United States v. Fahima Egeh Mahamud*

Feeding Our Future. However, only a fraction of these reimbursement funds were used by MAHAMUD to purchase food.

33.    Instead, MAHAMUD—who controlled the Future Leaders bank accounts—diverted much of those taxpayer dollars for the purchase of real property, for the benefit of herself, and to other companies associated with MAHAMUD, including Minneapolis Autism Center Corp, Future Properties LLC, Fahima Property Group, and Khayr Property Group Inc.

### Count 1
(Wire Fraud)

34.    Paragraphs 1 through 33 are incorporated herein.

35.    On or about the date listed below, in the State and District of Minnesota and elsewhere, the defendant,

**FAHIMA EGEH MAHAMUD,**

for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

| Count | Approximate Date | Wire Details |
|---|---|---|
| 1 | June 15, 2021 | An email from FAHIMA EGEH MAHAMUD to Feeding Our Future with the subject line "May-1 21-Future Leaders Clicker" |

All in violation of Title 18, United States Code, Sections 1343 and 2.

*United States v. Fahima Egeh Mahamud*

## THE CONSPIRACY TO DEFRAUD THE UNITED STATES THROUGH CCAP

### Count 2
(Conspiracy to Defraud the United States)

36.     Paragraphs 1 through 24 are incorporated herein.

37.     From in or around October 2022 through in or around December 2025, in the State and District of Minnesota and elsewhere, the defendant,

**FAHIMA EGEH MAHAMUD**

did combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to knowingly and willfully devise and participate in a scheme and artifice to defraud the United States by cheating the United States government and any of its agencies and departments out of money and property, and by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of HHS, by and through ACF, in its administration and oversight of block grants provided through the CCDF, including CCAP funds administered by the State of Minnesota.

38.     Between in or around October 2022 and in or around December 2025, FAHIMA EGEH MAHAMUD, by and through Future Leaders, submitted claims for reimbursement from CCAP in the amount of approximately $4.6 million on behalf of recipients from whom co-payments were not collected as required.

39.     In furtherance of the conspiracy, and to accomplish its objects and purpose, FAHIMA EGEH MAHAMUD committed and caused to be committed, in the District of Minnesota, the following overt acts, among others:

10

*United States v. Fahima Egeh Mahamud*

a.      On or about July 5, 2025, FAHIMA EGEH MAHAMUD submitted a claim to CCAP for reimbursement of child care services purportedly provided by Future Leaders between June 23 and July 6, 2025, to Child 1, claiming $900, and falsely certifying that a $192 co-payment had been collected.

b.      On or about August 3, 2025, FAHIMA EGEH MAHAMUD submitted a claim to CCAP for reimbursement of child care services purportedly provided by Future Leaders between July 21 and August 5, 2025, to Child 2, claiming $1,229.76, and falsely certifying that a $100 co-payment had been collected.

c.      On or about November 23, 2025, FAHIMA EGEH MAHAMUD submitted a claim to CCAP for reimbursement of child care services purportedly provided by Future Leaders between November 10 and November 23, 2025, to Child 3, claiming $900, and falsely certifying that a $98 co-payment had been collected.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

40.     Counts 1 through 2 of this Information are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(1).

41.     If convicted of any of Counts 1 through 2 of this Information, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code,

11

*United States v. Fahima Egeh Mahamud*

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1 through 2.

42.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c) and 18 U.S.C. § 982(b).

Dated: May 20, 2026

DANIEL N. ROSEN
United States Attorney

*/s/ Matthew C. Murphy*
MATTHEW C. MURPHY
Assistant U.S. Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Office: (612) 253-0984
MN Atty ID: 0391948
Matthew.Murphy2@usdoj.gov

REBECCA E. KLINE
Assistant U.S. Attorney

LORINDA LARYEA
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

/s/ Shankar Ramamurthy
SHANKAR RAMAMURTHY
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice